UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BETSY M.,<br><br>　　　　　Petitioner,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner of Social Security Administration,<br><br>　　　　　Respondent. | Case No. 1:19-CV-00314-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Betsy M.'s Petition for Review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits filed August 14, 2019. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will affirm the ALJ's decision and dismiss the Petition.

## BACKGROUND

On July 15, 2013, Petitioner filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on October 1, 2012. (AR 196.) Petitioner is a high school graduate with prior work experience as a certified family home provider and as a personal care assistant. Petitioner meets the insured status

requirements through September 30, 2014. At the time of the date last insured, Petitioner was 46 years of age. Petitioner claims she is unable to work due to lower back pain, bilateral knee pain and excessive weight that limits her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. Petitioner underwent two lumbar surgeries, one in 2002 and another in 2006, after conservative treatment proved unsuccessful to alleviate her lower back pain. The application was denied initially and on reconsideration.

A hearing was conducted on December 10, 2014, before Administrative Law Judge (ALJ) Lloyd E. Hartford. After hearing testimony from Petitioner and a vocational expert, ALJ Hartford issued a decision finding Petitioner not disabled on February 26, 2015. (AR 26-37.) Petitioner submitted a request for review and additional medical records to the Appeals Council. The Appeals Counsel denied review and the case was appealed to the Court. *Betsy M. v. Berryhill*, Civil No. 1:16-cv-0497-REB (D. Idaho Nov. 14, 2016).

On December 21, 2017, the Court issued a memorandum decision and order finding: 1) the ALJ properly considered the opinion evidence, and 2) the new medical evidence submitted to the Appeals Council was not a separate basis for remand. (AR 438-466.) However, the Court found error in the ALJ's evaluation of Petitioner's statements regarding the severity and functional impact of her impairments. The case was remanded pursuant to sentence four of 42 U.S.C. § 405(g). The Appeals Council vacated the ALJ's decision dated December 10, 2014, and remanded the case to another ALJ for further proceedings consistent with the order of the Court. (AR 474.)

**MEMORANDUM DECISION AND ORDER - 2**

On remand, ALJ Stephen Marchioro held a hearing on April 12, 2019. (AR 369-411.) Following testimony by Petitioner and a second vocational expert, ALJ Marchioro issued a decision on April 26, 2019, finding Petitioner not disabled. (AR 349-361.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of ALJ Marchioro's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded.

**MEMORANDUM DECISION AND ORDER - 3**

*Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The single issue on review is whether the ALJ gave specific, clear, and convincing reasons, supported by substantial evidence in the record, to support his assessment of Petitioner's statements about the severity and functional impact of her impairments. (Dkt. 16 at 1.)

**1.    Legal Standard**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; [the ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)). The Ninth Circuit recently reaffirmed this principle, stating the ALJ must specifically identify the testimony that the ALJ "finds not to be credible and ... explain what evidence undermines that testimony.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

The standard is whether there is substantial evidence to support the ALJ's conclusion. *Trevizo*, 871 F.3d at 674. The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are sound. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r*

**MEMORANDUM DECISION AND ORDER - 5**

*Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

When evaluating a petitioner's subjective symptom testimony, the ALJ must consider all of the evidence in the record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029.[1]

**2.   Petitioner's Statements**

**A.   Petitioner's Function Report**

In her July 30, 2013 Function Report, Petitioner described her symptoms and physical limitations. (AR 234-242.) According to Petitioner, she has back, leg, knee, and foot pain on a regular basis; pain in her left leg "greatly affects" her ability to sleep; and her left leg has given out on her when she walks. (AR 234.)

Petitioner described her daily activities as "normal daily living activities to the best of my ability." (AR 235.) Petitioner stated she cares for her dog by letting it outside and giving it food and water. Petitioner reported having pain when attending to personal

---

[1] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifying that the "subjective symptom evaluation is not an examination of an individual's character" and that it requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

care tasks such as standing in the shower, shaving, sitting down, and rising to standing. Petitioner prepares simple meals but her daughter does most of the household cooking. Petitioner stated she is able to do some house chores and yardwork such as light dusting, but needs assistance with heavy lifting, vacuuming, and chores that involve kneeling.

Petitioner reported that she usually goes outside every day; is able to go out alone; and can walk, drive, and ride in a car. (AR 237.) Petitioner pays her own bills, handles money, and shops both in stores and online for food and basic items. Petitioner stated she is limited in how long she is able to sit, stand, and walk because of back, leg, and knee pain, and that her conditions restrict her ability to engage in activities she used to enjoy such as: reading, watching movies, and socializing. (AR 238.).

### B. Petitioner's Hearing Testimony

At the first hearing, Petitioner testified that she injured her back in September of 2012, lifting a sofa and, separately, lifting an individual during the course of her work as a homecare provider. (AR 52-56, 61.) Petitioner stated she took "old" pain medications to alleviate her back pain in 2012, but did not go to a doctor because she did not have insurance. (AR 61 -62.) Petitioner testified she was unable to do work that involved repeated lifting of fifty pounds and sitting or standing for long periods of time. (AR 63-64.)

Petitioner testified that her daily activity level dropped after she stopped working in 2012, to where she was limited to light household chores such as wiping off counters, dusting, and tending to a dog and several cats, but that she could not vacuum or do any

**MEMORANDUM DECISION AND ORDER - 7**

bending or lift anything heavy such as a large basket of clothes. (AR 67-68, 86-88.) Petitioner stated her daughter helps with household chores and pet care. (AR 398.) Petitioner testified that she does not sleep well, generally wakes later in the morning, and sometimes needed to lay down for thirty minutes to one hour due to fatigue. (AR 85-87.)

She goes to the grocery store once a week, shops online, and drives. Petitioner stated she can walk for approximately a quarter-mile and walks her dog outside for approximately fifteen to twenty minutes a day. (AR 71-72.) Petitioner testified to being able to dress herself, prepare simple meals, and shower without assistance. (AR 69.)

Petitioner stated she is unable to sit or stand for long periods of time, even with the ability to move and alternate positions, and could not sit for more than one hour at a time to pay bills or attend social events or church. (AR 78-79, 95-98.) She testified to being able to lift twenty pounds but not repeatedly, and could not work eight hours a day, five days a week, because she required longer than normal breaks during the day. (AR 77.) However, Petitioner testified that she assists her daughter with selling vintage clothing on eBay by accompanying her daughter once a week to look for clothing and also by washing the items before sale.

At the second hearing in 2019, Petitioner's testimony regarding her daily activities was consistent with her testimony during the prior hearing. (AR 389.) Petitioner stated she was able to prepare simple meals, clean, and do light housework, but that her daughter helped with household chores and did a lot of the cooking. Petitioner testified to being unable to sit for long periods because of back pain, but that changing positions

**MEMORANDUM DECISION AND ORDER - 8**

between sitting, standing, and walking helped. (AR 395-397.) Petitioner stated she took pain medication which caused some side effects, including seizures and difficulty focusing. (AR 390, 392, 397.)

3.     **ALJ's Assessment of Petitioner's Statements**

The ALJ found Petitioner has the following severe impairments: lumbar degenerative disc disease with prior surgeries; degenerative joint disease of the bilateral knees, and obesity. (AR 352.) The ALJ found Petitioner's other alleged impairments - insomnia, depression, plantar fasciitis, and carpal tunnel syndrome – did not reasonably relate back to the period under review; and that her physical impairments of seizures, hypertension, and urinary frequency were non-severe. (AR 352.)[2]

The ALJ accurately summarized Petitioner's symptom statements relating to her physical limitations made in the functional report and her testimony at both hearings consistent with the recitation of the same provided above. (AR 355-358.) The ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by most physical examinations, the claimant's lack of treatment between October 2012 and July 2013 and the claimant's activities of daily

---

[2] Petitioner does not challenge the ALJ's determinations regarding her other impairments. (Dkt. 16.)

**MEMORANDUM DECISION AND ORDER - 9**

living as summarized above.

(AR 358.) Specifically, the ALJ found that the objective medical record, lack of treatment records from the relevant time period, and Petitioner's daily activities, together did not fully support Petitioner's subjective limitations regarding her lumbar spine impairment and degenerative joint disease of the bilateral knees. (AR 356-357.)[3]

For the reasons that follow, the Court finds the ALJ provided clear and convincing reasons for finding Petitioner's symptom statements not reliable. *Lambert*, 980 F.3d at 1278; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ identified the statements by Petitioner that the ALJ found were unsupported and explained why he concluded Petitioner's statements were not credible. *Id.*

### A. Inconsistent with Medical Evidence

The ALJ found that Petitioner's symptom allegations were not consistent with the medical evidence. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

---

[3] The ALJ determined Petitioner retained the RFC to perform sedentary work except she must alternate between sitting and standing, where she could sit for thirty minutes and then stand for ten minutes while remaining at the workstation; could occasionally stoop, crouch, and crawl; could never kneel; was able to occasionally climb ramps or stairs; could never climb ladders, ropes, or scaffolds; and other postural and environmental limitations. (AR 354.) Sedentary work is defined as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The ALJ found Petitioner would be off task less than five-percent of an eight-hour workday during the relevant period.

*Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ properly considered the lack of corroborating objective medical evidence as one factor in determining the severity of Petitioner's symptoms. The ALJ provided a comprehensive summary of the medical evidence and other evidence in the record pertinent to Petitioner's physical limitations. (AR 355-359.) The ALJ concluded the objective medical evidence did not fully support Petitioner's allegations of an inability to perform work at less than a sedentary exertion level during the relevant period. (AR 355.) As to her lumbar pain and bilateral knee pain in particular, the ALJ found that the objective medical records and Petitioner's daily activities, taken together, did not fully support Petitioner's subjective limitations. (AR 356-357.)

The ALJ noted Petitioner's history of two back surgeries and that Petitioner continued working following her last surgery in 2006 until injuring her back in 2012. The ALJ recognized the medical records contain some support for Petitioner's alleged limitations, both as to her lumbar and bilateral knee impairments. (AR 355-356.) However, the ALJ went on to identify particular medical evidence contrary to Petitioner's alleged subjective limitations regarding her ability to sit, stand, and walk. Namely, objective findings that Petitioner had a normal range of motion in the lumbar spine, negative straight leg raises, "excellent" strength in the muscle groups associated with L4, L5, and S1, and "excellent" proximal strength. (AR 356) (citing AR 290-291, 324.)

**MEMORANDUM DECISION AND ORDER - 11**

Similarly as to Petitioner's bilateral knee impairment, the ALJ discussed medical records showing Petitioner had full motor strength of the bilateral lower extremities, normal sensation, full range of motion, and normal gait and station without the use of an assistive device. (AR 357) (citing AR 291, 303, 319, 333, 337-338.) The ALJ cited objective findings that Petitioner was able to rise from a squatting position and transition up and down from a chair and examination table without difficulty. (AR 357) (citing AR 289.) The ALJ also pointed out that Petitioner treated her lumbar and knee impairments with medication during the relevant period. (AR 355-356) (citing AR 281, 288, 298.)

The ALJ explained that these records were inconsistent with Petitioner's statements about the severity of the limitations caused by her impairments. (AR 355-357.) Namely, Petitioner's statements about the extent to which her impairments limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. The ALJ pointed to Petitioner's allegations that her symptoms limit her ability to perform daily activities such as household chores, prepare meals, bathe, care for her dogs, and shop in stores. (AR 355.) In doing so, the ALJ identified the testimony by Petitioner that he found to not be credible and discussed what evidence undermined that testimony. *Lambert*, 980 F.3d at 1277.

The Court finds the ALJ's decision articulated a specific, clear and convincing reason to discredit Petitioner's symptom statements. The ALJ identified particular records with objective findings contrary to Petitioner's alleged limitations. Further, substantial evidence supports the ALJ's conclusion that the objective medical evidence,

**MEMORANDUM DECISION AND ORDER - 12**

in conjunction with Petitioner's daily activities discussed below, is inconsistent with Petitioner's subjective limitations. Where "the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). This is true even where evidence exists to support more than one rational interpretation. *Batson*, 359 F.3d at 1193; *Lewis*, 236 F.3d at 509. Based on this record, the Court finds the ALJ reasonably concluded that Petitioner's subjective symptom statements were inconsistent with the medical evidence.

### B. Activities of Daily Living

The ALJ found that Petitioner's daily activities were inconsistent with the level of impairment she alleged. (AR 356-358.) An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, Petitioner reported being unable to work due to physical impairments that caused lower back pain and bilateral knee pain, and excessive weight that limited her

ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. The ALJ noted, however, that Petitioner engaged in activities that were incompatible with her alleged level of severity of limitations in sitting, standing, walking, and lifting. The ALJ observed that Petitioner was able to:

> walk to get around, drive a motor vehicle, care for her dog occasionally without assistance, get dressed without assistance, prepare simple meals occasionally without assistance, perform light household chores without assistance, watch television, go to church activities and lift 20 pounds occasionally. Furthermore,…she assisted her daughter with her eBay business by riding along in a motor vehicle when her daughter goes to buy "vintage clothing" once a week, helps her daughter to wash the purchased vintage clothing prior to sale and review paperwork.

(AR 356.) The ALJ concluded that these activities do not support Petitioner's subjective allegations regarding the persistence and severity of her lumbar spine and bilateral knee impairments. (AR 357.)

Petitioner argues the ALJ failed to support his finding that Petitioner's daily activities were inconsistent with her allegations about the functional impacts of her impairments. (Dkt. 16 at 13-15.) The Court disagrees.

An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified specific daily activities that evidence Petitioner was less limited than she alleged. (AR 355-358.) For instance, the ALJ pointed out that Petitioner was able to help her daughter run an eBay vintage clothing website by riding in a motor vehicle with her daughter to shop for the

**MEMORANDUM DECISION AND ORDER - 14**

vintage clothing, helping wash the purchased items prior to sale, and reviewing paperwork. (AR 355-357.) The ALJ also pointed to Petitioner's statements that she was able to walk, drive, tend to her personal needs, prepare simple meals, and perform light household work, all without assistance. (AR 356-357.)

In doing so, the ALJ stated a clear and convincing reason for giving less weight to Petitioner's subjective symptom testimony. The ALJ identified the testimony he found not credible and discussed what evidence undermined that testimony. *Lambert*, 980 F.3d at 1277.

Petitioner argues the record lacks details about her involvement with her daughter's eBay business that would support the ALJ's determination regarding her ability to engage in work activities. (Dkt. 16 at 14.) The Court finds otherwise.

At the first ALJ hearing, Petitioner testified that she accompanied her daughter approximately once a week to go to thrift stores and yard sales looking for vintage clothing to sell, and assisted with washing the purchased items. (AR 89, 92.) The ALJ pointed specifically to those details in discussing Petitioner's daily activities. (AR 355-357. The ALJ's discussion of the record and conclusion regarding the Petitioner's involvement in her daughter's business are supported by the record and sufficient to state a clear and convincing reason for discrediting Petitioner's statements.

For these reasons, the Court finds the ALJ's determination that Petitioner was engaged in activities of daily living that were inconsistent with her subjective allegations regarding her impairment is supported by substantial evidence and a clear and convincing

**MEMORANDUM DECISION AND ORDER - 15**

reason for rejecting Petitioner's statements.

### C. Lack of Treatment

An ALJ may appropriately consider treatment history, or lack thereof, in evaluating a petitioner's symptom statements. SSR 16-3p at 6-7 (The Commissioner recommends assessing records of medications, treatments and methods used to alleviate symptoms as well as medical source opinions and reports regarding claimants treatment and responses to treatment.). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

The regulations require an ALJ to consider possible reasons a petitioner may provide for not complying with treatment or seeking treatment consistent with the degree of his or her complaints. *See* SSR 16-3p. Inability to afford treatment or access low cost medical services can be a legitimate reason for not seeking medical treatment. *Id.*; *see also Trevizo*, 871 F.3d at 681 (9th Cir. 2017); *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it.").

**MEMORANDUM DECISION AND ORDER - 16**

Here, the ALJ noted that Petitioner did not seek any medical treatment between October of 2012 and July of 2013 for her lumbar spine or bilateral knee impairments. (AR 356-357.) The ALJ recognized Petitioner's testimony that her lack of treatment was "due to her financial constraints" but, nonetheless, noted that Petitioner "was able to seek treatment, although sporadic, with medical providers between July 2013 and December 2014" and that Petitioner had not had an "exacerbation" of her lumbar pain or bilateral knee pain requiring hospitalization during the relevant period. (AR 356, 357.)

The Court finds the ALJ's reliance on the lack of treatment records between October of 2012 and July of 2013 as a basis for discrediting Petitioner's symptom statements was error. Petitioner testified she delayed seeking treatment after injuring her back in the fall of 2012 for approximately ten months, because she did not have insurance. (AR 73.) Instead, Petitioner stated that she treated her pain by self-medicating with left over Gabapentin from a prior back surgery and obtained a prescription for additional Gabapentin without seeing a doctor. (AR 279-281.) Petitioner testified that she self-treated until August 19, 2013, when she saw Samantha J. Portenier, M.D. (AR 279-281.)

Petitioner further represented that she did not pursue other types of treatments such as physical therapy or injections, because she was self-employed, without insurance, and because the injections would provide only temporary relief. (AR 75.) When questioned by her attorney, Petitioner explained she had not sought a third spinal surgery because the doctor told her she would need a fusion and that she should put it off as long

**MEMORANDUM DECISION AND ORDER - 17**

as possible. (AR 396.)

The Court does not disagree with the ALJ's observation that Petitioner obtained treatment sporadically despite her representations that she was without insurance.[4] However, Petitioner testified that the reason for not pursuing treatment between October of 2012 and July of 2013 was her lack of insurance and financial resources. Moreover, Petitioner explained that, during that period of time, she was self-treating with left over pain medications. The ALJ, therefore, erred in using the lack of treatment records for the six months between October of 2012, and July of 2013, as a basis for rejecting Petitioner' statements.

The error, however, was harmless. The ALJ set forth other clear and convincing reasons for discrediting Petitioner's symptom statements that are supported by substantial evidence and sufficient to uphold the ALJ's determination. *See Batson*, 359 F.3d at 1197 (The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are sound.).

4. **ALJ's Characterization of the Record**

Petitioner argues the ALJ misrepresented that the reason Petitioner stopped working as a caregiver in 2012 was because her sister had been placed in a nursing home. (Dkt. 19 at 4.) Instead, Petitioner contends that her testimony was that her sister had to be placed in a nursing home, because Petitioner was no longer able to care for her due to

---

[4] Petitioner was also treated by Richard E. Manos, M.D., in July 2014, and Kurt J. Nilsson, M.D. in December 2014. (AR 318.) Petitioner explained she was not required to pay for an MRI in 2014, because she did not have insurance. (AR 295.)

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's increasing back pain. The Court finds that the ALJ properly characterized the record.

Petitioner testified at both ALJ hearings that she stopped working as a caregiver for her sister for a "combination of reasons." (AR 62, 384-385.) Namely, Petitioner's own "physical problems" and because her sister had "mental problems" and was getting harder and harder to take care of, resulting in her sister being placed in a nursing home. (AR 62, 384-385.) Petitioner testified that her alleged onset date of October 1, 2012, related to when she injured her back moving furniture and lifting her sister in the course of her work as her sister's caretaker. (AR 51-52.)

The ALJ's decision stated that Petitioner was a "care giver for her disabled sister 12 hours a day, 7 days a week and this job only ended when her sister mov[ed] into a nursing home. This generally coincided with the alleged onset of disability date." (AR 355.) Importantly, immediately preceding that statement, the ALJ recognized that in the fall of 2012, Petitioner exacerbated her lower back impairment when she lifted a couch and had increased back pain. (AR 355.) The ALJ further noted that Petitioner's job as a care provider for her sister was "physical work." By correlating Petitioner's testimony regarding the alleged onset date, the exacerbation of her back injury, and the conclusion of Petitioner's employment as a caregiver for her sister, all occurring in the fall of 2012, the ALJ accurately recounted Petitioner's testimony and the record relating to the end of her work as a caregiver. The Court finds no error in the ALJ's description of the record in this regard.

**MEMORANDUM DECISION AND ORDER - 19**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

DATED: February 16, 2021

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**